```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND


UNITED STATES                  *

     V.                        *   CRIMINAL NO. WDQ-08-0269

CHRISTOPHER JUDE BLAUVELT      *
```

## MEMORANDUM AND ORDER SETTING CONDITIONS OF PRETRIAL RELEASE

### Background

This matter came before the Court on a second hearing on detention. At the first detention hearing, the defendant was detained, but I expressed my willingness to reconsider detention if a psychiatric evaluation was performed, demonstrating that defendant posed no undue risk to the community if released pretrial, under appropriate conditions. Having heard and considered all the evidence, I am wholly convinced that the dual societal goals of assuring the safety of the community and the liberty of the defendant before conviction can be served through release of the defendant, but on the conditions of supervision proposed here.[1]

---

[1]  1.  Electronic home monitoring in the home of his mother;
2.  the presence of either his mother or stepfather or other adult approved by Pretrial Services in the home at all times;
3.  release from home detention only for meetings with counsel, court appearances, medical, mental health and substance abuse treatment;
4.  if the defendant leaves the home for any of the above purposes, he must be accompanied by his mother, stepfather or other adult approved by Pretrial Services.
5.  prohibition of use of alcohol and drugs and random testing to ensure abstinence; and
6.  no access to the internet or other method to obtain pornography materials;

The charges here, of course, are very serious.  But the seriousness of the charges -- even charges of a sexual nature -- do not compel pretrial detention.  In objecting to release on these stringent conditions, the government suggests a picture of a person completely "out of control," who would somehow evade the proposed electronically monitored "lockdown", escape his mother and stepfather's custody, and prey on school girls in the neighborhood.  As will be discussed below, the evidence does not support such a picture of extreme danger.  To the contrary, whatever risk to the community the defendant may pose can be effectively managed through pretrial supervision.  As I stated in an earlier opinion: "[i]t is imperative in [sex offender] cases that courts evaluate the evidence presented and apply the law, rather than allowing natural revulsion to overcome objective analysis."  U.S. v. Thomas, No. CRIM. CCB-03-0150, 2006 WL 140558 (D.Md. Jan. 13, 2006).

Defendant is charged in a seven count Superseding Indictment with sexually exploiting a minor for the purpose of producing visual depictions of a minor engaged in sexually explicit conduct, possession of visual depictions of minors engaged in sexually explicit conduct, distribution of controlled substances to a minor, and possession of a controlled substance.  These charges relate primarily to an incident that occurred in 2006 involving the defendant videotaping his sexual intercourse with the victim, then a 14 year-old female and sister of his ex-girlfriend, and the possession of visual depictions of a minor

engaging in sexually explicit conduct.[2] The defendant had previously been charged in state court-in April 2007-with similar charges related to the videotaping of the minor victim engaged in masturbation and sexually explicit poses, the possession of child pornography and CDS possession. When the defendant appeared in court on the state charges, he was released on a $125,000 bond. He remained on bond, without incident, until arrested on the federal charges more than a year later.

At the outset of the investigation in January 2007, a search was made of the defendant's home; computer and other devices were seized at that time. For reasons not entirely clear, state authorities did not complete their forensic examination of the computer and other devices until March 2008. According to the government, upon discovering the video of the defendant having sex with the victim, the state referred the case to the United States Attorney's Office. The federal grand jury indicted defendant on the above cited charges on June 3, 2008.

When the indictment was returned on the federal charges, the government sought his detention based on danger posed to the community. Defendant initially agreed to detention, and then requested a detention hearing.[3] At that hearing, on August 4,

---

[2] Defendant was first indicted on June 3, 2008, on the first two counts of sexual exploitation of a minor and possession of visual depictions of minors engaging in sexually explicit conduct. On August 19, 2008, the grand jury returned a superceding indictment, adding counts of distribution of controlled substances to the victim and her boyfriend and possession of CDS.

[3] The government argues that, with the discovery of the video of the defendant's intercourse with the victim (and federal charges) the

2008, the undersigned judge detained the defendant, finding that he posed a risk to the safety of other persons and the community. The Court found that there were no conditions or combination of conditions to reasonably ensure community safety based on the charges, the weight of the evidence, his unstable mental health and the 15 year mandatory minimum for the pornography production charge. However, at the hearing, the Court indicated that the detention order would be reconsidered if a psychiatric evaluation was presented indicating that he posed no serious risk if released under appropriate conditions. On September 16, 2008, defendant filed a motion to review defendant's pretrial detention submitting a psychiatric evaluation by Dr. Neil Blumberg. The government asked for the delay of any further hearing on release to allow completion of its own psychiatric evaluation, which was granted. On October 17, 2008, the Court received the psychiatric evaluation of Dr. John Lion.

A further detention hearing was held on October 21, 2008. The defendant presented a report of Dr. Neil Blumberg and his testimony supporting pretrial release on certain conditions. The government presented the report and testimony of Dr. John Lion in support of detention. Defendant also presented the testimony of

---

extreme dangerousness of the defendant became clear.  The Court does not criticize the government for the 3 month delay between the State referral of the video and the case to the U.S. Attorney's Office and the return of the indictment.  The government did not, however, choose to proceed by way of complaint to expedite his arrest and pretrial detention, due to his extreme dangerousness.  During that period he continued in the community, subject apparently only to a bond for appearance, with no conditions to protect the community.

4

his mother and stepfather as proposed custodians.

For the reasons set forth below, the Court has concluded that there is clear and convincing evidence of <u>some</u> risk to the community if the defendant is released pretrial; frankly there is often risk where mental illness is implicated.  However, the Court has also concluded that there are conditions that will reasonably assure the safety of others, and of the community, if defendant is released pretrial to allow him to prepare for his trial now scheduled for November 10, 2008.

## **Governing Law**

Title 18 § 3142 provides the statutory framework for the Court's consideration of pretrial detention pending trial in a case.  Section 3142(e) provides that:

> [s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure appearance of the person as required and the safety of the community if the judicial officer finds there is probable cause to believe the person . . . committed an offense involving a minor victim under Section . . . 2251 . . . of this title.

Because the grand jury returned an indictment charging defendant with violation of 18 U.S.C. § 2251, the Court finds there is probable cause to believe the defendant committed the offense and a presumption arises.  However this presumption as others presumptions in the Bail Reform Act, is rebuttable.  Moreover, the presumption merely shifts the burden of producing evidence; the ultimate burden of proof always remains with the government. Bruce D. Pringle, *Bail and Detention in Federal Criminal Proceedings*, 22 Colo. Law 913, 920 (1993) and cases cited

5

therein.  Moreover, courts have found that the burden of rebutting the presumption is not great.  The defendant need only present some credible evidence indicating that there are conditions that could be imposed that would reasonably assure the safety of the community or another person.  Id.  Thereafter, the Court considers the factors under 18 U.S.C. § 3142(g), as it would in a non-presumption case.[4]

The Court has concluded that the defendant, through the testimony of Dr. Blumberg, has rebutted the presumption. Moreover, as directed by the statute, the Court has taken into account the available information on the 3142(g) factors, some which weigh against release and some for release.  The Court has considered significant the lack of any prior convictions whatsoever.  While defendant did receive  probation before

---

[4] The factors to be considered in making the decision on detention include:
    (1)  The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
    (2)  the weight of the evidence against the person;
    (3)  the history and characteristics of the person, including -
        (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
        (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
    (4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

judgment for "telephone misuse: repeat calls," he successfully completed that probation in 2000. He was not on probation, parole or on release pending trial, at the time of the alleged offenses here. He has no failures to appear. He has had six arrests in the last 20 years, but on minor charges. He was charged with "sex offense 4th degree" in 2000, but found not guilty. He has lived in the greater Baltimore community for most of his life. He has strong family ties to the community, particularly to his mother and grandparents. While he himself does not have significant financial resources, his mother and stepfather do and are prepared to use them to assist him in this case. Moreover, his mother and stepfather have been together for 20 years. Both report long term employment in the Westminster area. They own a home worth $375,000 with $175,000 in equity which they are willing to pledge. They are also willing to take time from their jobs, if necessary, to be present in the home while he is on pretrial release. Mr. Blauvelt has a history of drug and alcohol abuse, and clearly suffers from mental illness; although, he was on medications and in treatment at the time of his arrest on the federal charges. As to the factors which weigh against release, the Court has concluded that the conditions of mental health treatment, alcohol and drug testing and lockdown on electronic monitoring more than adequately address them.

The issue in the October 21 hearing was "the nature and seriousness of the danger to any person or the community that would be posed by [his] release." 18 U.S.C. § 3142(e)(4).

Specifically, the Court held the hearing to consider expert opinion on his psychiatric condition, and the danger, if any, that his condition posed to the community.

As indicated above, the state charges were filed in April 2007.  While those charges did not include production of pornography involving intercourse with the victim, they did include production of pornography involving the victim's self masturbation and the possession of child pornography.  He was released on bond in June.  There has been no allegation of any new sexual misconduct after the period charged in the indictment -- January 2006 - January 11, 2007.  He had been in the community continuously until his arrest on the federal charges in June 2008.[5]

Dr. Neil Blumberg was asked to evaluate the defendant specifically to determine "whether Mr. Blauvelt could be safely released from pretrial detention."  Dr. Blumberg reviewed the state charges, the application for charges, the federal indictment and some memoranda regarding the FBI investigation and Dr. Lion's report.  Dr. Blumberg's evaluation, encompassed approximately nine hours of interview (in three sessions from May to July 2008)[6] and administration of a battery of psychological tests including ("DAPS"), ("MMPI-2"), ("MCMI III") and ("PAI").

---

[5] During this period, however, while living in Florida he was charged with two alcohol related misdemeanors - driving while under the influence and open container, but both charges were dropped.

[6] Apparently Mr. Blauvelt began seeing Dr. Blumberg prior to his federal indictment.

8

Dr. Blumberg testified that these tests confirmed his clinical diagnoses and established the validity of the diagnoses, that is, testing whether the subject is understating or exaggerating his problems.  Additionally, he interviewed the defendant's mother.  He did not review any of the child pornography itself, which is the subject of the charges, but did know from the state charges and from the defendant about the nature of the child pornography.[7]

He diagnosed the defendant with:  Alcohol Abuse (DSM-IV-TR: 305.00); Opioid Abuse (DSM-IV-TR: 305.50); Cocaine Abuse (DSM-IV-TR: 305.60); Posttraumatic Stress Disorder, Chronic (DSM-IV-TR: 309.81); Rule Out Bipolar II Disorder (DSM-IV-TR: 309.81); Rule Out Major Depressive Disorder, Recurrent (DSM-IV-TR: 296.3); Paraphilia, Not Otherwise Specified, Involving Pornography and Teenage Girls (DSM-IV-TR: 302.9); and Borderline Personality Disorder (DSM-IV-TR: 301.83).

Dr. Blumberg said his conditions are treatable.

Notably, Dr. Blumberg did not diagnose the defendant with pedophilia, but "paraphilia not otherwise specified, including pornography and teenage girls."  He made this diagnosis based on the defendant's obsession with pornography; he could not diagnose

---

[7] The application for statement of charges provided that:  "Some of these videos [found on defendant's computer] reviewed contain footage of very young females who appear to range in age from 6-14 years of age.  These victims are subjects of full sexual intercourse, fondling, oral sex activities, such as fellatio and cunnilingus, anal sexual intercourse," and "still images includ[ing] females who appear to be underage, nude or partially nude and either posing suggestively or engaging in sexual activity."

defendant as a pedophile which requires obsession with prepubescent girls; his obsession was with post-pubescent girls. Defendant denied interest in prepubescent girls to Dr. Blumberg, but admitted that there were some images of prepubescent girls on his computer.  Even if a pedophile, Dr. Blumberg reported that there is less risk of recidivism when victims are girls, rather than boys.  He indicated that the defendant admitted intercourse with the underage victim while high on drugs and alcohol.  The defendant was not as clear regarding the videotaping, but admitted that he regularly made videos of his sex with a variety of partners.  Dr. Blumberg stated that Mr. Blauvelt -- during his interviews with him -- provided no indication that he had had any other underage sexual partner.  Dr. Blumberg further noted that the defendant demonstrated "considerable remorse as to the event that led to current charges," and that in his opinion he "is motivated to address the disorders that led to his current situation."

Finally, Dr. Blumberg opined that "Mr. Blauvelt would be a low risk for re-offending if he was released on home detention with monitoring to his mother's home under the conditions that he obtain outpatient mental health and substance abuse treatment for the above-noted disorders.  He should be randomly tested to ensure that he remains abstinent from alcohol and drugs and should not have access to the internet or other methods where he might obtain pornographic materials."

Subsequently, Dr. Lion conducted a similar evaluation of the

10

defendant -- "to assess his safety in the community should he be released on bond."  He was not asked to -- and did not -- comment on the sufficiency of the conditions Dr. Blumberg proposed for community supervision.  He did an approximate two hour interview of the defendant and a shorter interview of his mother.  He did not administer any psychological tests to confirm his clinical diagnoses.  Unlike Dr. Blumberg, he reviewed certain images and videos from Mr. Blauvelt's computer, other storage devices and his telephone, some of which he said were very disturbing.[8]  Dr. Lion observed that Mr. Blauvelt was "mildly dysthymic," but not melancholic or significantly depressed," "paranoid or hostile"; he detected "no delusions or hallucinations."  He diagnosed Mr. Blauvelt as manifesting a "narcissistic personality disorder" and pedophilia.  He stated that "[p]edophiles are known to under-report their victims, and are likely to commit new offenses."  However, Dr. Lion said in his interview with defendant that there was no indication of other underage victims.  Dr. Lion did not comment specifically in his report, or in his testimony, if and how the conditions Dr. Blumberg suggested were inadequate to protect the community.[9]  Dr. Lion simply concluded that "Mr.

---

[8] The government showed the Court the worst of the pornography involving a 5 or 6 year old female child.  The defendant vigorously denies purposefully obtaining child pornography.  Moreover, there is in his history no suggestion of interest in children of this young age.

[9] He did state that it is "too easy to get a computer," but it was not clear what he meant, considering that under the conditions proposed, he would be restricted to his mother's home and only in the community for limited purposes and then in the company of his mother, stepfather or other pre-approved adult.  Dr. Lion also volunteered

11

Blauvelt presents a danger to underage females in the community."[10]

Not only were Dr. Lion's diagnoses of Mr. Blauvelt different, but his observations were also different in several ways from those of Dr. Blumberg.  Dr. Blumberg reported defendant's acknowledgment of his sex with the underage victim, and use of drugs with minors.  Dr. Lion stated, with concern, his repudiation of these activities.  However, Dr. Lion does state that this "repudiation" might be the result of his attorney's instructions not to discuss with him the crimes with which he is charged.  Similarly, Dr. Lion said that Mr. Blauvelt disavowed photographing himself naked while Dr. Blumberg said he admitted doing that.  Additionally, while Dr. Blumberg found the defendant to be remorseful, Dr. Lion expressed the opposite opinion.

Both psychiatrists are well qualified and very experienced in performing assessments of this kind.  Having reviewed the two expert reports and having considered the experts' testimony in light of the other factors to be considered under § 3142, the Court has concluded that the conditions of release as proposed by defendant would be sufficient to assure the safety of the community.  Moreover, the Court finds the evaluation and

---

that he wasn't sure that defendant's mother understood the seriousness of the charges her son faced.  But, he stated that he had no reason to believe that Mr. Blauvelt's mother would not obey the Court's instructions as a custodian.

[10] Neither the Court nor likely Dr. Blumberg would disagree with Dr. Lion's primary conclusion that "Mr. Blauvelt presents a danger to underage females in the community."  It is the amount of risk and whether it can be managed in the community that is at issue.

testimony of Dr. Blumberg more thorough, more convincing and more reliable, particularly in terms of the diagnoses.  Dr. Blumberg spent considerably more time in his evaluation of Mr. Blauvelt and performed standard psychological tests which would bolster his conclusion as to diagnoses and validity.  Dr. Blumberg's diagnosis of paraphilia, not otherwise specified, involving pornography and teenage girls rather than pedophilia, seems more in line with the criteria in the DSM-IV-TR: 302.2[11] and the evidence as presented.  Although child pornography was found in the possession of the defendant,[12] the only evidence of any actual sexual activity is with a pubescent teenager.[13]  While Dr.

---

[11] Diagnostic Criteria for 302.2 Pedophilia
    A.   Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years of younger).
    B.   The person has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.
    C.   The person is at least age 16 years and at least 5 years older than the child or children in Criterion A.
   Note: Do not include an individual in late adolescence involved in an ongoing sexual relationship with a 12- or 13- year old.
     Specify if:
       Sexually Attracted to Males
       Sexually Attracted to Females
       Sexually Attracted to Both
     Specify if:
       Limited to Incest
     Specify type:
       Exclusive Type (attracted only to children)
       Nonexclusive Type

[12] It is not clear, however, if the pornography was primarily adult, or child.

[13] The government did not show the video to the Court; however, there was no suggestion that there was any force or violence or sadomasochism.  The victim was the sister of his former girlfriend.  This does not minimize the gravity of the offense and the damage to the victim.  However, from the perspective of level of danger to the

13

Blumberg did not review the pornography found on the defendant's computer and other devices, he knew from the defendant and from the police report that he possessed child pornography and videos of his intercourse with the underage teenager, and her masturbation, and his photos of himself naked.

Moreover, the underpinnings of Dr. Lion's opinion on dangerousness are questionable. First, Dr. Lion relies to a very significant degree on his diagnosis of Mr. Blauvelt as a pedophile. As previously stated, Dr. Blumberg disagrees with that diagnosis; Dr. Blumberg's diagnosis seems more thorough and more consistent with the evidence and the DSM-IV-TR criteria.

Even <u>assuming</u> that the defendant is a pedophile, the research indicates that the risk of re-offending would be slight, particularly in the short period of time he would be on release pending trial. The Court notes that neither expert quantified his risk assessment. However, it is clear that the recidivism rate for individuals with pedophilia with females is roughly half that for those that prefer males. DSM-IV, 571. As Dr. Lion acknowledged, the relevant literature reflects widely divergent recidivism statistics for sexual offenders, depending on numerous factors. One recent article describes the average sex offender recidivism rate as 10% to 17% after four to five years when <u>untreated</u>. Peter J. Fagan, Tomas N. Wise, Chester W. Schmidt, Jr. & Fred S. Berlin, <u>Pedophilia</u>, 288 J. AM. MED. ASSOC. 2458,

---

community, it bears some relevance.

2463 (2002). The authors also acknowledge as Dr. Lion stated, however, that the actual incidence of pedophilic behaviors is probably under-reported. Id. However, another expert concludes that "even with long follow-up periods [in excess of twenty years] and careful record searches, the average sexual offense recidivism rate rarely exceeds 40%." R. Karl Hanson, What Do We Know About Sex Offender Risk Assessment?, 4 PSYCHOL. PUB. POL'Y & L. 50, 67 (1998). Cf. John M. Fabian, Kansas v. Hendricks, Crane & Beyond: "Mental Abnormality," & "Sexual Dangerousness": Volitional vs. Emotional Abnormality & The Debate Between Community Safety & Civil Liberties, 29 WM. MITCHELL L. REV. 1367, 1426-32 (2003) (citing a 1997 study that indicated a 52% recidivism rate for extrafamilial child molesters over a 25 year period). Whatever the true recidivism rates, the results of the recidivism studies demonstrate that the longer the follow-up period, the higher the rates of recidivism. R. Karl Hanson, What Do We Know About Sex Offender Risk Assessment?, 4 PSYCHOL. PUB. POL'Y & L. 50, 55 (1998). Thus, it can be conversely inferred that the shorter the period of time at issue, the lower the rate of recidivism. Id. Here, of course, the period of supervised release pretrial is a few weeks, to months.

Critically, these studies were made as to recidivism of sex offenders who were in the community without the stringent conditions proposed for the defendant here. Dr. Lion knew of no

15

studies on recidivism of sex offenders under the type of supervision proposed here.  Additionally and critically important to the Court, since the initial January 2007 investigation and interview of defendant regarding his sexual activities with the underage victim here, there is no information that defendant has engaged in repeat behavior, pedophile or not.

    Second, Dr. Lion's opinion relies on certain of Mr. Blauvelt's statements to him, which were directly contrary to Mr. Blauvelt's statements to Dr. Blumberg.  Dr. Lion was concerned about the defendant's "repudiat[ion] of any involvement with child pornography, sex with minors or drug use with minors."

    However, Dr. Blumberg reported that Mr. Blauvelt acknowledged his sex with the underage victim and providing drugs to the two teenagers.  As for the child pornography, defendant admitted to Dr. Blumberg that there was child pornography on his computer, but vigorously denied purposefully obtaining it -- even saying he had attempted to contact the internet provider to have it removed.  Dr. Lion acknowledged that "his [Mr. Blauvelt's] posture [on these issues] may reflect . . . his attorney's instructions not to discuss crimes with which he is charged." That appears to the Court to be the most likely explanation for the apparently different information that Mr. Blauvelt shared with Dr. Blumberg and Dr. Lion, and the different perceptions by the two psychiatrists of defendant's openness and responsibility for his actions.

    Finally, according to Dr. Blumberg, Mr. Blauvelt

16

"demonstrated considerable remorse for the events that led to the current charges, and in his opinion, is motivated to address the disorders that led to his current legal situation." Dr. Lion reached the opposite conclusion based on his perception of defendant's repudiation of any criminal conduct.

As indicated, there is clear and convincing evidence that there is some risk to the safety of the community in the release of Mr. Blauvelt pretrial. Mr. Blauvelt clearly suffers from significant mental illness and has a history of drug and alcohol abuse. At the time of his arrest on the federal charges, he was, however, already in treatment at Sheppard Pratt and receiving medication for his psychiatric condition. While in detention, he was evaluated and continues to receive medications for his psychiatric condition. The conditions of release, mental health treatment and alcohol and drug testing, certainly can address, manage and mitigate these problems.

The Bail Review Act requires a reasonable assurance of the safety of the community, not a guarantee. See U.S. v. Barnett, 986 F. Supp. 385, 400 (W.D. La. 1997). Moreover, the probability and consequences of defendant's prospective acts must be balanced against the restraint on defendant's liberty as he is presumptively innocent. See 18 U.S.C. § 3142(j). Additionally, preparation of the defense in a case such as this requires review of considerable videotapes and other electronic evidence on the possession of child pornography charge, which is practically impossible if the defendant remains in detention. While Mr.

17

Blauvelt has admitted sexual intercourse with a minor, he vigorously denies interest in and knowingly accessing child pornography, based, he says, on his own sexual abuse as a child.

Finally, pretrial detention based on future dangerousness must be based on "clear and convincing evidence." "Clear and convincing evidence is defined as

> evidence which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction without hesitancy, of the truth of the precise facts in issue.'

(internal citations omitted). Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 285 (1990). See also 2 McCormick on Evidence § 340 (6th ed.) (clear and convincing evidence is evidence that the truth of a contention is "highly probable"). The Court does not and cannot find by clear and convincing evidence that there are no conditions which can reasonably assure the safety of the community. 18 U.S.C. § 3142(f)(2).

Rather, the Court believes that the following special conditions will reasonably assure the safety of the community:

1. electronic home monitoring in the home of his mother;

2. the presence of either his mother or stepfather or other adult approved by Pretrial Services in the home at all times;

3. release from home detention only for meetings with counsel, court appearances, medical, mental health and substance

18

abuse treatment;

    4.   if the defendant leaves the home for any of the above purposes, he must be accompanied by his mother, stepfather or other adult approved by Pretrial Services.[14]

    5.   prohibition of use of alcohol and drugs and random testing to ensure abstinence;

    6.   no access to the internet or other method to obtain pornography materials;

The government's opposition to release on these stringent conditions is necessarily based on a picture of a defendant out of control, who would somehow evade the electronic monitoring and his mother and stepfather's custody and sexually attack an innocent young girl. The government provided a map showing the proximity of schools to his family home. But there is no basis to suspect that defendant if released would attempt (or could on electronic monitoring and in the custody of his parents) visit such schools, much less prey on schoolchildren. He stands accused of sex with the sister of his ex-girlfriend and videotaping it. This specter is belied by his lack of prior sex crime convictions -- indeed any convictions. This specter is rebutted by his lack of any arrests or charges for sexual acts

---

[14] The Court does not necessarily feel that the requirement for constant presence of another adult is essential for community safety. However, the Court will impose that as an initial condition in response to the government's expressed concern. The Bail Reform Act requires imposition of the least restrictive conditions. 18 U.S.C. § 3142(c)(1).

while on bond for well over a year until the arrest on the federal charges.  Having evaluated the evidence, the Court is convinced that the safety of the community can be reasonably assured with the release of the defendant but on stringent conditions.  The concerns that the government (and Dr. Lion) raise would be more relevant if Mr. Blauvelt were to be released into the community without supervision.  The stringent conditions set comprehensively address and manage the risk to the community, posed by this defendant.


Date: October 28, 2008             /s/
                                   Susan K. Gauvey
                                   United States Magistrate Judge