IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                              | * |                               |
|------------------------------|---|-------------------------------|
| UNITED STATES OF AMERICA,    | * |                               |
|            v.                | * | CRIMINAL NO.:  WDQ-08-0269    |
|                              | * |                               |
| CHRISTOPHER JUDE BLAUVELT,   | * |                               |
|       Defendant.             | * |                               |
|                              | * |                               |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

MEMORANDUM OPINION

Pending is Christoper Jude Blauvelt's motion for a new trial.  For the following reasons, the motion will be denied.

I.   Background

Assistant United States Attorney ("AUSA") Michael Leotta is the Treasurer of the Francis D. Murnaghan, Jr. Appellate Advocacy Fellowship, a non-profit organization.  Michael J. Leotta Aff. ¶ 2.  Leotta communicates annually with an accountant ("GSS") about the Fellowship's tax return.  *Id.* ¶ 3; Hrg. Tr. at 10.  Leotta and GSS have never met.  Hrg. Tr. at 17; Leotta Aff. ¶ 5.  On November 10, 2008, GSS began jury service in *United States v. Christopher Blauvelt*, WDQ 08-0269.  Paper No. 63.

On November 14, 2008, during trial, Leotta--not knowing that GSS was a juror--emailed GSS for his invoice.  Leotta Aff. ¶¶ 7, 9.  GSS replied on November 16, 2008, stating that he was on jury duty in a "child porn" case, and was "loving life."  *Id.* ¶ 10; Hrg. Tr. at 13.  He also stated that (1) "[y]ou guys do not get

near the credit you deserve for what you do," (2) "I had no idea what it takes to do your job," and (3) "I'm sure you don't get paid enough either." Hrg. Tr. at 13. Leotta did not respond but reported the interaction to AUSA Stephen Schenning, the U.S. Attorney's Office's Professional Responsibility Officer. Leotta Aff. ¶ 12.

On November 17, 2008, a jury found Blauvelt guilty of sexually exploiting a minor for the purpose of producing and possessing visual depictions of the minor engaged in sexual conduct,[1] distributing cocaine to minors,[2] and possessing cocaine.[3] On November 18, 2008, AUSA Andrew Norman notified the Court and Blauvelt's counsel that AUSA Leotta knew GSS, and had sent him an e-mail during the trial. Paper No. 78.

On November 25, 2008, Blauvelt moved for a new trial. The Court held an evidentiary hearing on March 27, 2009.

II. Analysis

A.   Improper Communication

In a criminal case, any private communication with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial. *Remmer v. United States*, 347 U.S. 227, 229 (1954) ("*Remmer I*"). The Government has a heavy burden

---

[1] In violation of 18 U.S.C. §§ 2251(a), 2252(a)(4)(B).

[2] In violation of 21 U.S.C. § 841(a).

[3] In violation of 21 U.S.C. § 844(a).

to establish that the contact was harmless. *Id.* But, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The "entire picture should be explored." *Remmer v. United States*, 350 U.S. 377, 379 (1956) ("*Remmer II*").

Extrinsic contacts unrelated to the case are not presumed prejudicial, and do not support a new trial absent a showing of prejudice. *United States v. Blumeyer*, 62 F.3d 1013, 1016 (8th Cir. 1995); *United States v. Brasco*, 516 F.2d 816, 819 (2d Cir. 1975); *United States v. Caro-Quintero*, 769 F. Supp. 1564, 1580 (C.D. Cal. 1991).

There is a three-part test for analyzing ex parte juror contact. First, the moving party must provide evidence that there was extrajudicial communication that was "more than innocuous interventions." *Howard v. Moore*, 131 F.3d 399, 422 (4th Cir. 1997) (*quoting United States v. Cheek*, 94 F.3d 136, 141 (4th Cir. 1996)). If so, a presumption of prejudice arises. *Id.* The burden then shifts to the non-moving party to show that there is "no reasonable possibility that the jury's verdict was influenced by an improper communication." *Id.* To determine if communication was innocuous the Court considers if there was (1) private communication; or (2) private contact; or (3) tampering; (4) directly or indirectly with a juror during trial; (5) about

the matter before the jury.  *Cheek*, 94 F.3d at 141.  A brief,
innocent exchange between a prosecutor and a juror is not a basis
for a new trial.[4]  Interactions during trial and evidence of an
affinity between the trial prosecutor and a juror may be the
basis for a new trial.[5]

---

[4] For example, in *United States v. Smith*, during deliber-
ations a juror approached an AUSA at the synagogue to which both
belonged.  No. 03-4152, 2005 WL 1684694, at *1 (3d Cir. Jul. 20,
2005).  The juror told the AUSA (1) he was serving on a federal
jury, and (2) the judge's and prosecutor's names.  *Id.*  The AUSA
told the juror to "get away," and ended the discussion.  *Id.*  The
AUSA did not inform anyone; after trial, the juror told the
prosecutor and defense counsel about the interaction.  *Id.*
    The Third Circuit affirmed the denial of a new trial,
reasoning that the AUSA responded appropriately by ending the
conversation, and there was no evidence that the juror was biased
or the defendant had been prejudiced.  *Id.* at *2.  The court also
reasoned that prejudice was unlikely because the jury acquitted
one of the defendants.  *Id.*

[5] In *United States v. Lawhorne*, a juror stated during voir
dire that she knew one of the prosecutors through her business
and church.  29 F. Supp. 2d 292, 296 (E.D. Va. 1998).  The juror
stated that the relationship would not affect her judgment.  *Id.*
    After trial, the defendant told the judge that his mother
had witnessed the juror (1) converse with the prosecutor during
trial, and (2) give the prosecutor an "o.k." sign.  *Id.* at 298.
The defendant's mother told defense counsel about the incidents
during trial, but he did nothing.  *Id.*  The juror later testified
that she may have said hello to the prosecutor, and she gave the
prosecutor a "thumbs up" sign because the prosecutor's jewelry--
bought from the juror--looked good.  *Id.* at 300.  She testified
that her decision was not based on their relationship.  *Id.*
    The *Lawhorne* court held that the communication was more than
a merely innocuous intervention.  *Id.* at 307.  The court held
that the juror's signaling "demonstrated an affinity . . . for
the Prosecutor" that was "much stronger than that disclosed . . .
in the *voir dire* examination."  *Id.* at 307-08.  "[T]he nature of
the communications undercut the Juror's *voir dire* response that
[her] business relationship with the Prosecutor would not affect
[her] ability to be impartial."  *Id.* at 308.  The court held that
the communications were not innocuous, and the Government had not

Here, Leotta's email to GSS--about an invoice--was unrelated to the trial and is not presumptively prejudicial.  *Remmer I*, 347 U.S. at 229.  Further, Leotta did not know that GSS was a juror when he emailed him, and was not involved in Blauvelt's case. Leotta Aff. ¶ 9.  There is no evidence that Leotta attempted to influence the verdict.[6]  GSS testified that Leotta's email did not influence the verdict.[7]  Hrg. Tr. at 17-18.  As in *Smith*, this casual relationship between a juror and an uninvolved AUSA did not prejudice Blauvelt.

B.   Voir Dire Response

Blauvelt also seeks a new trial because GSS failed to disclose his relationship to Leotta during voir dire.  During voir dire, the Court asked the venire whether "you or any close family member or close friend" had been employed by a law enforcement agency.  Trial Tr. VD-105, Nov. 10, 2008.  GSS did

---

rebutted the presumption of prejudice.  *Id.*

[6] Blauvelt also argues that Leotta's failure to disclose the communication to the prosecutors was improper.  Mot. at 5. Although the Court's analysis focuses on the "fairness of the trial, not the culpability of the prosecutor," *Smith v. Phillips*, 455 U.S. 209, 219 (1982), there was no improper conduct by Leotta.

[7] Federal Rule of Evidence 606(b) prohibits a juror from testifying about the jury's deliberations or "the effect of anything upon that or any other juror's mind . . . as influencing the juror to assent to or dissent from the verdict."  But, a juror may testify about whether (1) extraneous prejudicial information was brought to the jury's attention, (2) outside influences influenced a juror, or (3) there was a mistake in the verdict form.  FED. R. EVID. 606(b).

5

not respond.

A defendant seeking a new trial based on a juror's voir dire response "must first demonstrate that a juror failed to answer honestly a material question . . . and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Gardner v. Ozmint*, 511 F.3d 420, 424 (4th Cir. 2007). Only when a juror's motive for concealing the information "affect[s] a juror's impartiality" does it affect the fairness of trial. *McDonough Power Equip.*, 464 U.S. at 556; *Conaway v. Polk*, 453 F.3d 567, 588 (4th Cir. 2006) (movant must show improper motive to succeed on juror bias claim). It is unclear whether the Fourth Circuit requires a movant to show that the juror deliberately concealed the truth.[8] Blauvelt's claim

---

[8] *See Conner v. Polk*, 407 F.3d 198, 205 (4th Cir. 2005) ("Although in *McDonough* the juror's incorrect voir dire response was an honest mistake, the *McDonough* test has been applied equally to deliberate concealment and to innocent non-disclosure."); *Jones v. Cooper*, 311 F.3d 306, 310 (4th Cir. 2002) (other circuits hold that innocent non-disclosure is sufficient); *contra Conaway*, 453 F.3d at 588 (if the two parts of the *McDonough* inquiry are satisfied, "a juror's bias is only established . . . if the juror's motives for concealing information or the reasons that affect the juror's impartiality can truly be said to affect the fairness of the trial") (*quoting McDonough*, 464 U.S. at 556) (internal quotations omitted).

*See also United States v. Parks*, No. 05-257, 2009 WL 294396, at *6 (W.D.N.C. Feb. 5, 2009) (in *Conaway*, the Fourth Circuit held that a movant must satisfy *McDonough* and also show that the fairness of his trial was affected by the juror's motives for concealing the information); *United States v. Shaoul*, 41 F.3d 811, 815-16 (2d Cir. 1994) (*McDonough* requires dishonesty); *United States v. Ortiz*, 942 F.2d 903, 909 (5th Cir. 1991) (*McDonough* permits honest, but inaccurate, voir dire answers).

fails under either standard.

Leotta and GSS have never met; they had only "occasionally" corresponded regarding tax issues.  Hrg. Tr. at 17; Leotta Aff. ¶ 5.  Leotta and GSS testified that they are not friends or related.  Hrg. Tr. at 17; Leotta Aff. ¶ 6.  Leotta and GSS are merely professional acquaintances.[9]  Thus, GSS truthfully failed to respond.

Further, GSS could not have been excluded for cause merely because he was acquainted with Leotta.[10]  Leotta was not involved in this case.  Further, GSS and Leotta—business acquaintances who communicated once a year—have a more distant relationship than those in *Shaoul* and *Roberson*.  The Court would not have

---

[9] GSS testified that he had not known that Leotta was a federal prosecutor.  Hrg. Tr. at 14.

[10] In *United States v. Shaoul*, a juror was related to an AUSA who was not involved in the trial.  41 F.3d at 816.  The Second Circuit found no basis to strike the juror for cause.  *Id.*  The court found it important that the AUSA was not involved in the case.  *Id.* at 816-17.  *Accord United States v. Thomas*, 676 F.2d 239, 244 (6th Cir. 1980) (juror was neighbor of AUSA who was not involved in the trial).
    In *Roberson v. United States*, a juror was a casual friend of the prosecuting AUSA.  249 F.2d 737, 740 (5th Cir. 1958).  In a recess during trial, the two conversed in the rest room about whether the jury would be able to go home that night if the case was not finished—the AUSA told him that he could not discuss the case.  *Id.*  The Fifth Circuit held that "a juror is not per se disqualified because he is acquainted with or a friend of counsel in a case."  *Id.*; *Garland v. United States*, 182 F.2d 801, 802 (4th Cir. 1950) ("It is well settled generally that relationship to the prosecuting attorney does not disqualify a juror.").  Because the defendant had not shown prejudice, and the conversation did not relate to the case, the district court did not abuse its discretion in declining to grant a new trial.  *Id.*

struck GSS for cause.  Accordingly, Blauvelt has not satisfied the *McDonough* test.

    C.   Actual Bias

    Blauvelt can also show "that a juror was actually biased, regardless of whether the juror was truthful or deceitful." *Jones*, 311 F.3d at 310; *Fitzgerald v. Greene*, 150 F.3d 357, 363 (4th Cir. 1998).  The Court may hold a hearing "at which the movant has the opportunity to demonstrate actual bias, or in exceptional circumstances, that the facts are such that bias is to be inferred." *Fitzgerald*, 150 F.3d at 363 (*quoting McDonough*, 464 U.S. at 556-57).[11]

---

[11] In *Fitzgerald*, the state trial judge asked jurors if any member of their families had been the victim of rape, robbery, or abduction; the juror said no and stated he could render a fair verdict. *Id.* at 363.  After the jury convicted the defendant, the juror told other jurors that he had no sympathy for rapists because his granddaughter had been molested as a child.  *Id.*  The jury foreman reported the incident.  The trial court questioned the juror and accepted his assertion that he was not biased.  *Id.*

    The Fourth Circuit accepted the trial court's finding that the juror's voir dire answer was honest because he had been asked whether a family member had been raped, not molested.  *Id.* at 364.  The court also rejected the defendant's claim of actual bias because the defendant had a chance to prove bias at a post-trial hearing, but the juror unequivocally stated that his granddaughter's molestation had no affect on his decision.  *Id.*

    The *Fitzgerald* court noted that bias should be implied only in "extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial."  *Id.* at 365 (*quoting Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988)).  Absent evidence that the juror (1) works for the prosecuting agency, (2) is closely related to one of the participants in the trial or crime, or (3) was a witness or involved in the crime, the court would not imply bias.  *Id.*

GSS stated in his email to Leotta that (1) "[y]ou guys do not get near the credit you deserve for what you do," (2) "I had no idea what it takes to do your job," and (3) "I'm sure you don't get paid enough either."  Hrg. Tr. at 13.  GSS testified that when he sent the email he did not know that Leotta was a federal prosecutor; he thought that Leotta was a trial attorney for the state.  *Id.* at 14.  He testified that his email showed admiration for all the trial participants--including Blauvelt's counsel--because he had not been aware of the pressures of trial. *Id.* at 14-17.  GSS testified that he had no preconceived notions about the case before it started, or when he responded to Leotta's email.  *Id.* at 12-16.

GSS's email is not evidence of his bias, and there is no basis for inferring bias from the distant, professional relationship of GSS and Leotta.

III. Conclusion

For the reasons stated above, Blauvelt's motion for a new trial will be denied.


May 1, 2009                          _____/s/_____
Date                                 William D. Quarles, Jr.
                                     United States District Judge